The court will proceed to the fourth case, McMillon v. Reinstein. Mr. Sultan. Good morning. I am William Sultan and I represent the plaintiff appellant Sheena McMillon in this case. My presentation to you this morning will be in three parts. Property interests, liberty interests, and proximate cause. The basic facts of this case are that in 2015, Ms. McMillon received a notice from the Wisconsin Department of Children and Families revoking her license to own and operate a child care center on the basis that Joanna Reinstein with Milwaukee County informed the Department of Children and Families that Milwaukee County had made a substantiated finding that she had neglected and financially exploited her adult disabled daughter. In investigating that claim, Ms. McMillon learned that in 2012, that Ms. Reinstein had set a communication to her then private employer, Iris, informing Iris of the same fact, that Joanna Reinstein with Milwaukee County made a substantiated finding that Ms. McMillon had neglected and financially exploited her disabled adult sister. Ms. McMillon alleges in this case that she was fired from Iris in 2012 because of that communication by Joanna Reinstein. And she alleges that in 2015, her license to own and operate a child care center was revoked because of that communication with Joanna Reinstein. She also alleges that she was suspended from her part-time job at Walgreens as a pharmacy technician because that finding was forwarded up through the chain through the state of Wisconsin Department of Safety and Professional Services. In this case, although the parties agree that no hearing was ever provided to Ms. McMillon, the defense has, I guess, denied that there was notice provided, but that's our allegation. This case comes to the court on a 12C motion. Our allegation is that Ms. McMillon was never provided with any notice or a hearing or any opportunity to challenge the substantiated finding. I can't stress enough that this is not just a plain finding. This is a substantiated finding, which gives the false impression that she, in fact, had some process that she simply did not have. Well, you know, this Reinstein, you know, she's spreading, I don't know what you want to call it, gossip or something. You know, she's bringing up a lot of bad stuff, but it seems what the real injury here is the inability to get the license, taking away the license, and that's with the Department of Child Services or whatever it's called. Well, there are three injuries that were alleged, and we certainly agree with that, but the main thing is that the government cannot interfere with a private employer for arbitrary reasons without providing any due process whatsoever, which is what has happened in this case, and we cited FDIC v. Malin for that proposition. There are, of course, other cases cited in there, such as Greene v. McElroy, which is at 360 U.S. 474-1959, and that's really at the heart of this case, which is that, and I should point out that the case law is not 100% clear on this point. Both McElroy and Malin frame it as both a property interest and a liberty interest, even though the tests laid out by this court are different, or I should say the standard. For a property interest case, this court has never held that you must lose your job in order to pursue that type of claim. However, for the liberty interest portion, you have held that you actually have to be locked out of an industry, and so to the point of the license, there's no question that revoking that license by operation of Wisconsin law resulted in her inability not only to own and operate that child care center, but to even work or contract in that industry whatsoever, and the allegation and the complaint is that Ms. Reinstein made those statements to the Department of Children and Families specifically for those reasons. The exact same thing happened in 2012 with her employer at Iris. She contacted Iris directly. They do admit that in their answer for that express purpose. They don't admit that part, but that they contacted Iris, but that's the only possible reason for why she would make that communication with Iris to cause that firing, and that's what happened, and although by operation of Wisconsin law, Ms. McMillan did not lose her ability to work with at-risk adults, as a practical matter, she did. No reasonable employer is going to hire an employee that has a finding of neglecting and financially exploiting folks under a government program, which is what Milwaukee County did, and in this case, the district court seemed to struggle with the issue of proximate cause. The issue here is Ms. McMillan's claim is that she lost her license and lost her job and was suspended without pay because of her publication of these communications. The district court saying that we have to sue the employer or sue the Department of Children and Families simply has never been the law, and it should not be the law today, and as a practical matter, the Department of Children and Families does not determine whether the finding was made with or without due process or even whether the finding is accurate or not. All they determine is is there a finding, yes or no, and that is the statement by Ms. Reinstein. The other point I'd like to make here is Ms. Reinstein does make the argument that we have to identify some sort of under-independent source of law as it relates to the private employers, and that just simply isn't true based upon the reasoning of FDIC versus Mallin and even cases before that, and I want to make this point crystal clear, which is a duty that a private employer may owe an employee is separate from a duty that the government employs. I guess an easier way to say it is at-will employment by parties to an employment relationship does not mean at the will of third parties, so the obligation for the government to provide due process and to not interfere with a private employment relationship without providing that process, whether it's pre or post, in this case we have neither, is separate. We don't have to prove, and certainly FDIC versus Mallin doesn't make that claim that she was not an at-will employee or that she had a contract or that she had some sort of other independent source in order to maintain that claim. I also think throughout the district court's decision, the district court, I think, fused these ideas of can Ms. McMillan prove damages versus has Ms. McMillan alleged a constitutional violation, and I would offer the court Kerry versus Fyfus, which makes clear that if there's a constitutional violation, a plaintiff can sue for that constitutional violation even if there aren't any damages, although we certainly believe that we have properly pleaded a claim for damages, both under the property interest test of interfering with private employment and causing the revocation of a license without due process, and under the liberty interest standard of completely excluding her from two industries. And if there aren't any questions, I'll keep the rest of my time. All right. Thank you, Mr. Sullivan. Ms. West. Good morning. May it please the court. I'm Catherine West, and I appear on behalf of Appaloose, Joanna, Rhinestone, and Milwaukee County. Because the district court did dispose of this matter on a 12C motion, the allegations of the complaint must be taken as true. Of course, there are many background facts that the district court and this court cannot consider. Even so, whereas here the facts which have been pled establish an airtight defense for Joanna Rhinestone and Milwaukee County, the district court properly dismissed this case, and its decision should be affirmed. I'd like to address two main points. First, the property interest, and then the liberty interest and the standards that the district court applied and that this court should apply. As to Ms. McMillan's property interest claim, she specifically concedes that DCF, the Department of Children and Families of the state of Wisconsin, revoked her child care license. She concedes that IRIS, a state of Wisconsin agency, terminated her employment, and she concedes that she was suspended by her private employer, Walgreens. An individual pursuing relief in a Section 1983 action must establish that the defendant was personally responsible for the deprivation of a constitutional right. The facts pled, along with the applicable law, do not show that Ms. Rhinestone, a Milwaukee County Adult Protective Services investigator, had any authority to revoke the state of Wisconsin child care center license of Ms. McMillan, nor do they show that Ms. Rhinestone had any authority to terminate the employment of Ms. McMillan with a state of Wisconsin agency, or that Ms. Rhinestone had any authority to suspend Ms. McMillan's employment with her private employer, Walgreens. To the extent that there are no set of facts which would provide Ms. McMillan with a viable cause of action for property interest against Ms. Rhinestone, there likewise is no basis for a Monell claim against the County of Milwaukee. Well, did IRIS terminate her because of what Rhinestone said? That's what she alleges. But Ms. Rhinestone was privileged under Chapter 55 of the Wisconsin statutes to provide the information that she did provide both to the Department of Children and Families and to IRIS because those were exceptions to the confidentiality rules that an investigator like Ms. Rhinestone is bound by when she's conducting investigations pursuant to that statute into allegations of abuse, neglect, and financial exploitation of an adult who is vulnerable. So IRIS didn't deprive her of some property right? I'm sorry? She talks about a property interest, and is IRIS? In her employment through IRIS, which is a state agency, and remember Ms. Rhinestone is an employee of Milwaukee County, not the state. So what Ms. Rhinestone is claiming is that her employment through the state agency, IRIS, working with her disabled sister, was terminated by IRIS. Not by Ms. Rhinestone, but by IRIS itself. Because of the information that Ms. Rhinestone legitimately provided pursuant to the statute under which she operated. So would it be a proper lawsuit against IRIS? Well, in fact, that's what the district court found. And with respect to both her child care center license. I understand about the DCS. Right, and presumably with respect to IRIS too. Those are two entities both functioning through the state of Wisconsin, and they would be the ones who would be responsible for providing the due process prior to any adverse action either for her employment or her license. She could still, at least as it stands now, she could still get a license or work in the health care industry. To the extent that she pursued the relief, it's hard for me to actually speak to what she's entitled to do through the state. She's not prohibited from it. Pardon me? She's not prohibited. To my knowledge, I don't know that she has retained her license from the Department of Children and Families. So I don't know. But, again, this brings up this issue. She didn't sue the state of Wisconsin. She didn't challenge their process. They're the ones. The state of Wisconsin controls it with regard to those two. Exactly. And, in fact, the state of Wisconsin, through the Department of Children and Families, provides an opportunity to appeal a revocation of her license through Chapter 48 at Section 72. She didn't avail herself of that. She did not. She did not. So turning to the second point, and that is Ms. McMillan's liberty interest claim, the allegations in her complaint reveal that the information she claims affected her good name, reputation, honor, and integrity was not publicly disclosed, which is the point I was making before. It was disseminated by Ms. Reinstein in a confidential manner, consistent with the terms of the law for disclosure, and that is Chapter 55 of the Wisconsin Statutes, which also requires that the recipients of that information, whether it be DCF or IRIS or any other entity that's allowed to have that And that's similar to the case, the Palka case, which this court decided in that they're, well, it's stigmatizing. The standard that the district court eventually applied, saying that it wasn't clear, in fact, that Ms. McMillan sufficiently pled an occupational liberty interest claim, but construing her allegations liberally, the district court applied the three-point test, which requires that an individual like Ms. McMillan must show that she was stigmatized by the defendant's conduct, that the stigmatizing information was publicly disclosed, and that she suffered a tangible loss of other employment opportunities. In this case, I think the most significant issue is the second prong of that test, which is the public disclosure element. It specifically requires that the defendant actually disseminate the stigmatizing comments in a way that would reach potential future employers in the community or the community at large. And the facts pled by Ms. McMillan do not show that Ms. Reinstein communicated those facts to anyone other than those who would have been authorized to access them and act on them under Wisconsin law. The Palco v. Shelton case was the one I was referring to, and that is a case where an individual sheriff's deputy of the county sued both the county and the city after the city conducted an investigation into some actions. He sued the city, but this court said that, in fact... Was there some investigation of the alleged abuse? In this case, in the Palco case? This one, this case. When Rubenstein, is that her name? Reinstein. Reinstein. When Reinstein came to Iris, I assume they didn't just fire her on that basis. I assume there's some sort of indication or challenge or response or something. I think the court could infer that Iris as an essentially, we have to take the allegations as the plaintiff has stated them, as Ms. McMillan has stated them, but to the extent that Iris employed Ms. McMillan to provide services to her disabled sister for whom which a complaint had been made, that Iris itself may have been involved in the investigation and could actually draw its own conclusions from the information provided. One thing that's important, I think, to note is there, as Chapter 55 of the Wisconsin Statutes provides, there are two sort of levels of records. There's a record just that is a statistical record, and then there are records that consist of the investigative file. The investigative file can be provided to an entity like DCF, to an entity like Iris, to the extent they need that information. But it's not a conclusion necessarily of a protective services investigator like Ms. Reinstein that is provided. It is the actual file. So those entities, whether it's DCF, whether it's Iris, whether it's somebody else, a guardian or something like that, can look at the information and draw their own conclusions as to whether or not it supported a decision to substantiate an individual for any kind of abuse, neglect, or financial exploitation. Well, DCF canceled her license, right? It did. It also told her that she could appeal that decision. She didn't do that. She did not do that. So if there are no questions, I'll conclude. Thank you. Thank you, Ms. West. Mr. Sulzman. Thank you. Let me be clear. Ms. McMillan is forever barred from being in the child care industry or having a license under Wisconsin Statute 48.685-4MA3 because there is a finding of neglect and financial exploitation against her. Now, if you look at the facts of the complaint, which the court has to take as true, this alleged finding was made in 2012, and we know that her license wasn't pulled until 2015. And the reason for that is because there isn't actually a finding. So it's important to understand that what we're complaining about are Reinstein's statements to IRIS, Walgreens, and the Department of Children and Families. Now, let me also be clear on this particular point, which is IRIS. IRIS is a Wisconsin state agency, but the agency that Ms. McMillan worked for is a private employer. It's IRIS FSA if you look at the complaint. So it's a different entity. As it relates to some other questions about did she appeal the finding, what I would refer the court to is the bill of costs in this case for transcripts of over $2,000. Keep in mind this was a 12C motion where there was very little opportunity to do any discovery. There was actually an appeal by Ms. McMillan. There was also a companion case by her mother, and if you read the complaint as a whole, you'll see that really Ms. McMillan is getting caught up in a conspiracy against her mother. And in the companion case involving Ms. Meeks, which basically gives rise to this case, you have all this testimony by Ms. Reinstein, which is how we get this case. Now, those facts are not in our complaint, so the court can't use it, but it is very frustrating to be told that we should have appealed the decision with DCF when, in fact, we have a decision from DCF telling us that DCF doesn't have the jurisdiction to hear the constitutional question of due process. All they determine is was there a finding, not even whether it was accurate or not. Thank you, Mr. Sultan. Thank you, Ms. West. The case is taken under advisement,